Good morning, your honors. Ben Coleman from Mr. Vargas-Sancen. What I'd like to do is start off with the collateral attack, and to the extent I have time, I'll address a couple of the sentencing issues. With respect to the collateral attack, I first want to start off with the 1326D1 prong, which is the exhaustion of administrative remedies. Judge Lorenz found that the administrative remedies were not exhausted, and therefore the attack was barred, and the government's arguing that on appeal. We've offered four different reasons as to why this collateral attack is not barred under D1. And I think the easiest one and the simplest way to address it is the fact that simply the government lost or destroyed the tape of the deportation proceedings. So we have no record as to what occurred with this alleged waiver of appeal. We don't know whether it was one of those mass waivers that these judges often, immigration judges often do, which have clearly been held to be improper. We don't know what was said to Mr. Vargas-Sancen. And the law is clear that the government bears the burden by clear and convincing evidence of establishing a knowing and intelligent waiver. The government didn't present clear and convincing evidence. They didn't present any evidence that the waiver was knowing and intelligent. So I think that we can easily get past that D1 issue. The only real point, the government in their response briefs claims that they presented a skimpy record as to the knowing and intelligent waiver. They really didn't present anything. They claimed that for, I don't know why they made this claim, that I didn't raise this issue below. In my reply brief, I pointed to the portions of the record where I specifically argued that they did not satisfy their burden of showing a knowing and intelligent waiver. I cited the case law that they had the burden by clear and convincing evidence, and they just didn't do it. I assume we agree with you on that point. How was the proceeding fundamentally unfair? Okay. And that thing is the heart of the matter. The proceeding was fundamentally unfair because Mr. Vargas-Sancen was deported because his 11352 conviction constituted an aggravated felony. That was the charge in the notice to appear. The notice to appear alleged that he was lawfully admitted into the United States as an immigrant in April of 1995, that in November of 1995 he suffered an 11352 conviction, and that that particular conviction constituted an aggravated felony. The Court just discussed this a little bit in the last case. As the Court knows, under Rivera-Sanchez, it's now clear that 11352 is not categorically an aggravated felony. Judge Lorenz reasoned and the government argues, well, it could have been an aggravated felony under a modified categorical approach. Once again, it's the government's burden to establish the modified categorical approach, and in this case they haven't. The only documents that have been submitted were actually submitted by me, and that's the complaint and the abstract of judgment, which appear at pages 3 and 4 of the excerpt of record. Unlike the other case, there is no specific allegation of sale only in the complaint, or it's actually information. In this case, it includes all the language in 11352, including transportation, including offering, which are solicitations. And if you look at the abstract of judgment, it lists sale, slash, transport, slash, offer, slash, to, slash, sell, controlled substance. It lists the whole gamut of 11352. So in this case, it's crystal clear that under the modified categorical approach, this conviction was not an aggravated felony either. Now, do we know if it was a plea or a jury trial? The abstract of judgment has next to it plea, has the plea, there's an X mark underneath plea. So they're claiming it was a plea, although these are the only documents that were available. And these documents do not establish that this was an aggravated felony under the modified categorical approach. Under United States v. Sandoval-Vanegas, would this be my note to myself is that it qualifies under the categorical approach under United States v. Sandoval-Vanegas? I think you're confusing two different convictions. The Sandoval-Vanegas case relates to the 11378.5 conviction, which is the sentencing issue. The deportation in this case was based on the 11352. So those are two separate issues in this case. In this case, the deportation only alleged the 11352, the notice to appear only alleged the 11352 conviction, and that that conviction alone constituted an aggravated felony. And that, the 11352, I guess I'm getting these mixed up. The 11352 was a 95 conviction? Correct. For aggravated felony. Well, they're claiming it was an aggravated felony. What was it in? The 11352 occurred in November of 95. The notice to appear, which appears on page 5 of my excerpts of record. And that's transportation or sale of cocaine base. Correct. And if you look at the, it has, even in the notice to appear itself, it has the transportation listed. And if you look at the pages 3 and 4, which are the information and the abstract of judgment, it includes transportation and it includes offers, which are solicitations, which are the two reasons why in Rivera-Sanchez this Court held that 11352 was overbroad. And again, it's repeated again in the abstract of judgment. Again, it has a notation on page 4, TRNS. It has a notation offer right there in the abstract of judgment. So it's crystal clear in this case that the modified categorical approach was not satisfied.  Right. Now, but what the government's arguing is that at the time of the deportation proceeding, the statute was deemed to be categorically an aggravated felony. Right. And so the response that we have to that is their position is that, well, you can't retroactively challenge the 97 deportation based on subsequent developments in the case law. And the answer to that is simply this Court has specifically said otherwise. And we – I actually block quoted this extensive quote from the case Pallares-Galan, which is – it's a – I think it's a 2004 Ninth Circuit case, 359 F-1088. And if you look at pages 2 to 3 of my reply brief, it was also said in the opening brief, I specifically lay out where this Court has said that you can rely on subsequent developments in the case law to – in a collateral attack under 1326. And this – and Pallares-Galan was describing another case, Leon Paz, where this exactly happened. Basically, in those two cases, the aliens were in deportation proceedings. Under the law at the time, they were deportable and had no claims for relief. Subsequently, a few years later, the Supreme Court decided INS v. St. Cyr, which indicated that they were entitled to relief. And what this Court said is, well, based on the subsequent development of INS v. St. Cyr, the deportation was invalid. So this Court has just rejected that argument, and the government hasn't cited anything contrary to that. So I think right here we have the 1326 charge should be dismissed. I can proceed to the sentencing issues. I actually want to, since I've got about three minutes left, and then I'll save a little bit for rebuttal. On the – on the sort of the almondars towards issue, I know this Court has gone backwards and forwards all over the place on the constitutional issue as to there is no constitutional problem, and if the Supreme Court wants to reverse almondars towards it, they can go ahead. And I'm not going to revisit that with you. I do think the statutory construction argument is different, and it hasn't been entertained by this Court. And there's one point that I think the Court can take judicial notice of. I have 1326 cases both in the Southern District of California and the Central District of California. In the Central District of California, and I'm sure the Court, this panel may have seen some 1326s out of the Central District this sitting, they allege 1326b in the indictment. They allege the prior felonies in the indictment, and at the guilty pleas, the courts take – require the defendant to admit the prior conviction. In the Southern District of California, they do not allege the 1326b provision. They do not allege the prior convictions, and there is no – in this case, there was no admission of any conviction at the time of the guilty plea. And what I think we have here is the – it would seem that if there was ever a case for the rule of lenity to apply, it would seem to apply in a case where you have two different districts that are neighboring districts in California that probably have the most – maybe with the exception of Arizona, the most amount of 1326s in the country, and they do two different things with respect to the indictments and how they take the guilty pleas in the cases. I think it's certainly at the very least – Isn't it that that's a matter of practice rather than as a matter of law, isn't it? Well, it is a matter of law, but what I'm saying is the practice I think shows how unclear the law is. And it's whether these – whether the prior convictions should be considered elements of the offense under the new version of 1326 and all the subsequent cases that occurred after Almandar's Taurus. And it appears that the Central District of California takes a position that these should be considered elements of the offense, or at least that they have to be alleged in the indictment and admitted at a guilty plea. The Southern District of California takes a different position. They don't think they need to be alleged in the indictment, and they don't have to be admitted at a guilty plea. And I think it's basically our position that under the statutory construction, this Court should reconsider the new version of 1326 and should hold that the prior convictions need to be alleged in the indictment, and they need to be admitted at a guilty plea if they're going to be used to enhance the sentence. And I'll save the remaining seconds for rebuttal. Thanks, Mr. Coleman. Ms. Phan. Good morning, Your Honors. Mary Phan for the United States. I'll first address the reasons why Mr. Vargas's collateral attack on his deportation is foreclosed at the threshold because of his failure to exhaust administrative remedies and why even on the merits, if the merits were considered, he has stated no cognizable claim. Mr. Vargas failed to exhaust his administrative remedies. Let's talk about what there is no dispute over. There is no dispute that Mr. Vargas waived appeal. Mr. Vargas's claim is that there is insufficient evidence that the waiver was knowing involuntary, primarily because the deportation tape was lost. Now, there is no per se rule of presumption of involuntariness if the deportation tape was lost. It's the government's burden to prove that it was knowing, considered an intelligent waiver, and there's nothing to prove that. Absolutely. Yes, Your Honor, it's absolutely the government's burden to prove that it's a knowing involuntary waiver. However, this burden doesn't exist in a vacuum. The government can't imagine claims and then rebut them. There has to be a claim by the defendant of involuntariness. You don't have to imagine a claim and rebut it. You have the burden of proving it. Yes. You know what? We have such limited time. Why don't you get to why the proceeding was nevertheless fundamentally fair? The proceeding was not fundamentally unfair under this Court's clear precedence in Areola, Areola, and Alvarenga v. Lobos. Areola, Areola is particularly on point. In that case, the defendant was deported on the basis of the law at the time. Now, later on, and it became clear under this Court's law that a DUI is not an aggravated felony. Does that seem fair, that if the law changes, that you don't get the benefit of it on a collateral attack? That's not really changed. There's no law that's changing. It's our construction of the law that's changing. It's the interpretation of law. But, Your Honor, at some point, there has to be finality. That was the basis. for Alvarenga v. Lobos. That was the basis for Areola, Areola. And it draws sustenance from the Supreme Court's opinion in Teague v. Lane. And I also note that Alvarenga v. Lobos cites to a criminal case, Cleve v. Hill, where the defendant was convicted on a charge of conspiracy to commit second-degree murder. And later on, later developments in California case law show that no such crime exists. This Court nonetheless held that the defendant could not rely on that later change in interpretation of the law to invalidate his conviction. So essentially, he was convicted on a crime that doesn't exist. But the principle of finality still subserves, still controls, rather. And I note that that opinion was actually written by Judge Fletcher. And that's relevant because? It's relevant because it shows that the principle of finality is controlling in this case. It inflects our interpretation. So Judge Fletcher is relevant because? Oh. I just noted that it was just by Judge Fletcher. Because? What does it have to do with our decision on this case, that it was by Judge Fletcher? It doesn't, Your Honor. I was just, that's how I remember cases sometimes. As to Polaris-Galan, which Vargas cites, Polaris-Galan is a different situation. It wasn't that the law, that the, it wasn't that this, in this case, the I.J. reasonably relied upon the law at the time. I mean, this Court had held that the defendant's felony conviction was categorically an aggravated felony. The I.J. reasonably relied on that. This Court later on reversed its interpretation. That's the case here. Polaris-Galan was not a case of reasonable reliance on this Court's controlling  Polaris-Galan was based on St. Cyr. And I note that in St. Cyr, at the time St. Cyr was decided, this Court was among the five circuits that all uniformly held in accord with St. Cyr. And so there's not this case of a later change in interpretation. Rather, this Court at the time had held inconsistently with St. Cyr. So it's not opposite to this case. It's inopposite to this case, rather. And rather, the cases that control are Alvarenga v. Lobos and Areola v. Areola. Finally, I'll address briefly the statutory interpretation claim. It's a very creative kind of end run around this Court's repeatedly reiterated rule that a prior conviction doesn't have to be charged in the indictment. It's creative, but as a textual matter, it just doesn't work. If anything, after the amendments to Section 1326, it's even clearer now that the penalties at subsection B are just that, penalties. Before, there wasn't the label penalties. Now, lest there be any doubt, Congress even put the label penalties to subsection B. Congress put generally, the offense generally as a subsection A. And Vargas claims that subsection B-3 and B-4 announce new offenses. Actually, they don't. They don't. They have longer wording, but they actually are a variant of the broader general subsection A. It's clear in this case that the textual matter, the end run around this Court's precedence doesn't work. Unless this Court has any questions of me, I would submit. If the Court is interested in hearing as to whether or not 11378.5 is a drug trafficking offense within the meaning of the Guidelines, I'm happy to address that. But it seems that the case, that issue is controlled by this Court's decisions in United States v. Benitez-Perez and this Court's decision in Sandoval-Venegas. Roberts. That's the 1986 conviction. That is the 1986 conviction. Yes, it seems as a categorical matter, the offense is a drug trafficking offense within the meaning of the definition at the Guidelines. And certainly, if thus there be any doubt, as a modified categorical matter based on the defendant's admissions, it's certainly a drug trafficking offense. Thank you, Your Honors. Thank you, Ms. Phan. Mr. Coleman. Ms. Phan admires your creativity, but doesn't put much stock in your, in your Well, I appreciate it, at least some commendation. But the one point I did want to hit on was the government relies on this Alvarenga v. El Lobos case and claiming that you can't retroactively, you can't rely on law that occurs after the deportation. What they don't tell you, and which I pointed out in the briefs, is that that's a civil immigration case, not a criminal case where there's a collateral attack in a 1326 case. And in Alvarenga v. El Lobos, this Court specifically said, and I quoted, the requirements are less stringent for orders used in non-criminal deportations than for orders used in criminal prosecutions. This Court went out of its way to say the rule is different in the civil deportation context when you're just trying to stay in the country versus the criminal 1326 context where you're collaterally attacking. So that's why Pallares Galan, which is where this Court allowed subsequent developments in the case law to invalidate a conviction, that's a 1326 criminal case. That's the case that controls here, not the civil immigration cases that they're talking about. Thank you. Roberts. Thank you, Mr. Coleman. Ms. Vann, thank you as well. The case just argued is submitted. We'll stand in recess for today.
judges: Lay , Silverman, Wardlaw.